# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MORGAN STANLEY SMITH BARNEY LLC,

                                       Civil Action No. 23-cv1688

                           Petitioner,

     - against -

CHARLES SCHWAB & CO., INC.,
CHRISTOPHER R. ARMSTRONG, and
RANDALL B. KIEFNER,

                           Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## PETITIONER'S MEMORANDUM OF LAW IN SUPPORT
## OF PETITION TO CONFIRM AWARD, FOR A TEMPORARY RESTRAINING
## ORDER, AND FOR A PRELIMINARY INJUNCTION

Yonit A. Caplow (018932012)
Dilworth Paxson LLP
2 Research Way
Princeton, New Jersey 08540
Tel: (609) 924-6000
ycaplow@dilworthlaw.com

    -and-

Ira N. Glauber
Dilworth Paxson LLP
99 Park Avenue, Suite 320
New York, New York 10016
Tel: (917) 675-4252
iglauber@dilworthlaw.com
*Attorneys for Petitioner Morgan
Stanley Smith Barney LLC*

123176594-9

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................... 1

THE FACTS .................................................................................................................... 5

   A.  The Schwab Arbitration ...................................................................................... 5

   B.  The New Arbitration for Contribution.................................................................. 8

ARGUMENT ................................................................................................................... 9

POINT I ........................................................................................................................... 9

THE PETITION TO CONFIRM THE AWARD SHOULD BE GRANTED .............................. 9

POINT II ........................................................................................................................ 11

MORGAN STANLEY'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND
PRELIMINARY INJUNCTION SHOULD BE GRANTED ................................................. 11

   A.  The Standard for Injunctive Relief .................................................................... 11

      (i)  Injunctions in Aid of Arbitration .............................................................. 14

   B.  Likelihood of Success ....................................................................................... 15

      (i)  New Jersey Law of Contribution .............................................................. 15

      (ii)  Florida Law of Contribution..................................................................... 16

   C.  Irreparable Harm ............................................................................................... 19

   D.  An Injunction Will Not Cause Armstrong and Kiefner To Suffer Harm ........................ 21

   E.  An Injunction Would Serve the Public Interest ................................................. 22

   F.  FINRA's Rules for Injunctions in Aid of Arbitration......................................... 23

CONCLUSION............................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

A.L.K. Corp. v. Columbia Pictures Indus., Inc.,
    440 F.2d 761 (3d Cir. 1971).................................................................................................11

Andrews v. Holloway,
    Civ. A. No. 95-1047(JBS), 1995 WL 875883 (D.N.J. Nov. 9, 1995) ...............................14, 19

Azir v. Wells Fargo Bank,
    Civ. A. No. 19-18837 (MAS) (DEA), 2022 WL 605716 (D.N.J. March 1,
    2022) .......................................................................................................................9, 10

Berkan v. Brown,
    242 So. 2d 207 (Fla. 3d DCA 1970), *cert. denied,* 246 So. 2d 111 (Fla.1971) ......................16

Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
    910 F.2d 1049 (2d Cir. 1990)................................................................................................3

Collection & Recovery of Assets, Inc. v. Patel,
    276 So. 3d 494 (Fla. Dist. Ct. App. 2019) ................................................................................16

Continental Group, Inc. v. Amoco Chemicals Corp.,
    614 F.2d 351 (3d Cir. 1980)...............................................................................................15

D'Ippolito v. Castoro,
    242 A.2d 617 (N.J. 1968).....................................................................................................15

Deckert v. Independent Shares Corp.,
    311 U.S. 282, 61 S.Ct. 229, 85 L.Ed. 189 (1940)...............................................................20

Elliott v. Kieswetter,
    98 F.3d 47 (3d Cir. 1996)...........................................................................................12, 13, 19

Fletcher v. Anderson,
    616 So. 2d 1201 (Fla. 2d DCA 1993) ...................................................................................18

Gerardi v. Pelullo,
    16 F.3d 1363 (3d Cir. 1994)...................................................................................................19

Hood v. Sheak & Korzun, P.C.,
    No. Civ.A. 95-5378, 1997 WL 597707 (E.D. Pa. Sept. 18, 1997) .........................................16

Hoxworth v. Blinder, Robinson & Co., Inc.,
    903 F.2d 186 (3d Cir. 1990)..........................................................................................12, 13, 19

Int'l Union of Operating Eng'rs, Local 841 v. Murphy Co.,
    82 F.3d 185 (7th Cir. 1996) ..................................................................................................2

Juul Labs, Inc. v. 4X PODS,
    439 F. Supp. 3d 341 (D.N.J. 2020) ....................................................................................11, 12

Kershner v. Mazurkiewicz,
    670 F.2d 440 (3d Cir. 1982)..............................................................................................11

Kiewit Infrastructure S. Co. v. W. Sur. Co.,
    No. 2:20-CV-660-JLB-NPM, 2021 WL 5416149 (M.D. Fla. Nov. 19, 2021) ........................17

Lopez v. Lopez,
    90 So. 2d 456 (Fla. 1956) .........................................................................................................17

Love v. Gibson,
    2 Fla. 598 (1849) ......................................................................................................................16

Marsellis-Warner Corp. v. Rabens,
    51 F. Supp. 2d 508 (D.N.J. 1999) ......................................................................................13, 19

Meckler v. Weiss,
    80 So. 2d 608 (Fla. 1955) .........................................................................................................16

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley,
    756 F.2d 1048 (4th Cir. 1985) ...................................................................................................4

Miller v. Mitchell,
    598 F.3d 139 (3d Cir. 2010) ......................................................................................................11

New Amsterdam Cas. Co. v. Popovich,
    113 A.2d 666 (N.J. 1955) ..........................................................................................................16

New Jersey Building Laborers Statewide Benefit Funds v. IGWT Corp.,
    No. 06-4399 (D.N.J. 2006) ........................................................................................................10

Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm.
    Co.,
    290 F.3d 578 (3d Cir. 2002) ......................................................................................................11

Ortho Pharmaceutical Corp. v. Amgen, Inc.,
    882 F.2d 806 (3d Cir. 1989) ..................................................................................................4, 14

PNY Technologies, Inc. v. Salhi,
    Civ. A. No. 12-4916, 2016 WL 4267940 (D.N.J. Aug. 10, 2016) .....................................13, 19

In re Prudential Ins. Co. of America Sales Practice Litig. All Agent Actions,
    133 F.3d 225 (3d Cir. 1998) ......................................................................................................22

Ramapo Bank v. Bechtel,
    539 A.2d 1276 (N.J. Super. Ct. App. Div. 1988) ......................................................................15

Regions Bank v. Carsello,
    No. 2:10-CV-113-FtM-36DNF, 2011 WL 13294593 (M.D. Fla. Aug. 16,
    2011) .........................................................................................................................................18

Republic Bus. Credit Corp. v. Camhe-Marcille,
    887 A.2d 185 (N.J. Super. Ct. App. Div. 2005) ........................................................................15

Robinson v. PNC Bank,
    Civ. A. No. 13-07818 (SRC), 2017 WL 2399082 (D.N.J. June 2, 2017) .................................10

Schrank v. Pearlman,
    683 So. 2d 559 (Fla. 3d DCA 1996) ..........................................................................................16

<u>Shamieh v. HCB Fin. Corp.</u>,
No. 1D21-1821, 2023 WL 2006513 (Fla. Dist. Ct. App. Feb. 15, 2023) ...............................17

<u>State Farm Mut. Auto Ins. Co. v. Am. Rehab And Physical Therapy, Inc.</u>,
376 F. App'x 182 (3d Cir. 2010) ...........................................................................................22

<u>Sutter v. Oxford Health Plans LLC</u>,
675 F.3d 215 (3d Cir. 2012), <u>aff'd</u>, 569 U.S. 564 (2013) ......................................................10

<u>UBS Financial Services v. Padussis</u>,
127 F. Supp. 3d 483 (D. Md. 2015), <u>aff'd</u>, 842 F.3d 336 (4th Cir. 2016) ...............................2

<u>United States for the Use and Benefit of JRW Service Group, LLC v. New Age
Development Corp.</u>,
No. 20-2055, 2023 WL 371394 (3d Cir. Jan. 23, 2023) ........................................................10

<u>United Transp. Union Local 1589 v. Suburban Transit Corp.</u>,
51 F.3d 376 (3d Cir. 1995).....................................................................................................22

<u>Van Horn, Metz & Co., Inc. v. Crisafulli</u>,
Civ. A. No. 21-01128 (FLW), 2021 WL 4317186 (D.N.J. Sept. 23, 2021) ...........................13

<u>Whitlock Packaging Corp. v. Precision Diversified Systems, Inc.</u>,
59 F. Supp. 2d 384 (D.N.J. 1998) ...........................................................................................9

<u>Wilmington Savings Fund Society v. Otieno-Ngoje</u>,
Civ. No. 2:16-5631 (WJM), 2016 WL 6821086 (D.N.J. Nov. 17, 2016).........................13, 19

<u>Zakarin v. Wells Fargo Advisors, LLC</u>,
Civ. A. No. 17-1088 (JMV) (JBC), 2017 WL 5128747 (D.N.J. Nov. 3, 2017) .................9, 10

**Statutes**

9 U.S.C. § 9............................................................................................................................10

9 U.S.C. § 10(a)......................................................................................................................10

9 U.S.C. § 11...........................................................................................................................10

9 U.S.C. § 11(a)......................................................................................................................10

9 U.S.C. §§ 9-13..................................................................................................................9, 22

**Other Authorities**

FINRA Rule 13804 ...........................................................................................................2, 8, 23

## PRELIMINARY STATEMENT

Petitioner Morgan Stanley Smith Barney LLC ("Morgan Stanley") respectfully submits this memorandum of law in support of: (i) its Petition for confirmation of the arbitration award entered in the FINRA arbitration known as <u>Charles A. Schwab & Co., Inc. v. Morgan Stanley, Christopher R. Armstrong and Randall B. Kiefner</u>, FINRA Case No. 19-00948, issued February 27, 2023 (the "Award"); and (ii) for entry of a Temporary Restraining Order and Preliminary Injunction to enjoin individual Respondents Christopher R. Armstrong ("Armstrong") and Randall B. Kiefner ("Kiefner") from dissipating, disposing of, or transferring  certain assets (exclusive of any attorneys' fees and costs owed by Armstrong and Kiefner to their attorney, Clinton W. Marrs) pending resolution of a motion for a permanent injunction in a new arbitration for contribution, being commenced by Morgan Stanley simultaneously herewith, to determine Respondents' proportionate share of the "joint and several" portions of the Award.[1]

As stated in Morgan Stanley's Petition to Confirm the Award, within 30 days of the February 27, 2023 date of the Award, *i.e.*, by March 29, 2023 (the "Due Date"), Morgan Stanley will pay claimant Charles A. Schwab & Co., Inc. ("Schwab") and FINRA (for its forum fees) the "joint and several" portions of the Award in full, which total $4,320,765.91 (the "Common Obligation"). Simultaneously upon filing the Petition in this proceeding, Morgan Stanley is commencing a new arbitration for contribution against Armstrong and Kiefner seeking an award of $1,440,255.30 against each of them, representing each of their one-third proportionate share of the total Common Obligation for which they are jointly and severally liable with Morgan Stanley.

---

[1] A copy of the Award is annexed as Exhibit A to the accompanying Petition for confirmation of the Award. The facts with regard to this matter are set forth in the Petition, and in the accompanying Declaration of Morgan Stanley's arbitration counsel, Christopher C. Coss, dated March 24, 2023 ("Coss Dec.").

In addition, by the Due Date, Morgan Stanley will pay Armstrong $2,850,900 pursuant to section 5 of the Award, and it will pay Kiefner $1,173,900 pursuant to section 6 of the Award.  By the Due Date, Morgan Stanley also will pay Armstrong and Kiefner $672,399 in attorneys' fees and $35,371.76 in costs related to the arbitration, as required under sections 7 and 8 of the Award.  Thus, Morgan Stanley will be paying over $3 million to Armstrong and approximately $1.5 million to Kiefner by the Due Date of March 29, 2023.

Armstrong and Kiefner each owe Morgan Stanley $1,440,255.30 in contribution for their proportionate share of the Common Obligation being paid by Morgan Stanley, which will be adjudicated in the new arbitration.[2]  See Point II below. As an aid to the newly commenced arbitration, Morgan Stanley seeks a Temporary Restraining Order and Preliminary Injunction to restrain and enjoin Armstrong and Kiefner from dissipating, disposing of, or transferring the money paid to them by Morgan Stanley under the Award, or any other assets, up to $1,440,255.30 each.

Pursuant to Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes, the Temporary Restraining Order of the Court will be in effect pending a decision by the arbitrators on an application that Morgan Stanley is filing in the arbitration for a permanent injunction. FINRA Rule 13804 provides that whenever a court issues a temporary injunction, FINRA must

---

[2] The Award did not state that Morgan Stanley may exercise the right of setoff and, therefore, Morgan Stanley will not "net out" its payment to Armstrong and Kiefner against what they owe to it for contribution. See Int'l Union of Operating Eng'rs, Local 841 v. Murphy Co., 82 F.3d 185, 190 (7th Cir. 1996) (finding that an "arbitrator's failure to mention offsets in his ruling means that no offset was granted"); UBS Financial Services v. Padussis, 127 F. Supp. 3d 483, 500 (D. Md. 2015) (motion to modify award in order to grant a setoff denied because "awarding a setoff would exceed this Court's authority to correct a mere 'scrivener's error'"), aff'd, 842 F.3d 336 (4th Cir. 2016).  Accordingly, Morgan Stanley will pay Armstrong and Kiefner the full amount awarded to them in sections 5-8 of the Award, and will seek an award for contribution in a new arbitration.

2

hold an expedited hearing within 15 days of the court order so that the arbitrators can decide whether to dissolve the injunction or make it permanent.

The injunctive relief sought by Morgan Stanley is necessary to prevent Armstrong and Kiefner from dissipating the money that they will receive from Morgan Stanley, and would remain in effect for only a very brief time; *i.e.*, the 15 days it will take for FINRA to hold the expedited hearing. At this expedited FINRA hearing, Armstrong and Kiefner will have every opportunity to persuade the FINRA arbitrators who will be deciding Morgan Stanley's contribution claim that this Court's TRO or Preliminary Injunction should be modified or vacated. In short, the impact of the relief sought by Morgan Stanley on Armstrong and Kiefner is *de minimis*.

In stark contrast, denying injunctive relief would cause substantial irreparable harm to Morgan Stanley. Under the FINRA rules, unless this Court grants a TRO or Preliminary Injunction, no hearing on injunctive relief before the FINRA panel would take place for many months and, likely, over a year. Armstrong and Kiefner both testified at the arbitration that they have serious financial difficulties. (Coss Dec. ¶ 23-24). In addition, they were found jointly and severally liable to Schwab because of their wrongful conduct, such as the alleged misappropriation of Schwab's confidential documents and information, *see* Ex. A, and have made abundantly clear they have no intention of paying their proportionate share of the Award. Without injunctive relief, Armstrong is likely to dissipate, dispose of, or transfer the $3 million that he will receive from Morgan Stanley by March 29, 2023, and Kiefner is likely to do the same with the roughly $1.5 that Morgan Stanley is paying to him that same date. And both will have ample time to do so.

As the Second Circuit noted in granting injunctive relief pending a FINRA arbitration in Blumenthal v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 910 F.2d 1049, 1053 (2d Cir. 1990): "Arbitration can become a 'hollow formality' if parties are able to alter irreversibly the status quo

before the arbitrators are able to render a decision in the dispute.  A district court must ensure that the parties get what they bargained for - a meaningful arbitration of the dispute." (citations omitted).  See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley, 756 F.2d 1048, 1054 (4th Cir. 1985) (4th Circuit granted preliminary injunctive relief pending FINRA arbitration to prevent it from being rendered a "hollow formality"), and the authority cited in Point II below.

In Ortho Pharmaceutical Corp. v. Amgen, Inc., 882 F.2d 806, 812 (3d Cir. 1989), the Third Circuit, citing Bradley, supra, similarly held that preliminary injunctive relief is appropriate pending arbitration in order to preserve the *status quo* and to prevent it from being rendered a "hollow formality."  An injunction is necessary to ensure that the arbitration award to be entered against Armstrong and Kiefner in favor of Morgan Stanley for contribution is collectible.  Without an injunction to prevent Armstrong and Kiefner from dissipating the money paid to them under the Award until the expedited FINRA hearing and ruling by the arbitrators for a permanent injunction, any favorable ruling on Morgan Stanley's claim against Respondents for contribution is likely to be uncollectible.  To prevent the arbitration from being rendered a "hollow formality," and to "ensure that the parties get what they bargained for - a meaningful arbitration of the dispute," the Court should enter a Temporary Restraining Order and a Preliminary Injunction enjoining Armstrong and Kiefner from dissipating, disposing, or transferring the money paid to them by Morgan Stanley, and any other assets, up to $1,440,225.30 each.

Morgan Stanley is paying the full amount owed to Armstrong and Kiefner without offset, and it is also paying the full amount of the Common Obligation to Schwab and FINRA even though Armstrong and Kiefner are jointly and severally liable with Morgan Stanley for two-thirds of those amounts. It is only fair that the Court protect Morgan Stanley against ending up with an

uncollectible award on its claim for contribution against Armstrong and Kiefner during the brief period until the FINRA arbitrators rule on the application for a permanent injunction.

## THE FACTS

The facts with respect to this matter are set forth in the Petition to Confirm the Award, and in the Coss Declaration. The facts will not be repeated at length herein, however, a brief summary is set forth below for the Court's convenience.

### A.    The Schwab Arbitration

Armstrong and Kiefner are former Financial Advisors of Schwab, who resigned their employment at Schwab on March 29, 2019 and went to work for Morgan Stanley. (Petition ¶ 10). Morgan Stanley terminated their employment on April 11, 2019 because they violated Morgan Stanley's transition policy, among other reasons. Id.

Schwab commenced the underlying arbitration in April 2019 against Morgan Stanley, Armstrong and Kiefner, alleging misappropriation of its confidential documents and information. (Petition ¶ 11). Armstrong and Kiefner filed a Cross-Claim against Morgan Stanley for breach of contract, among other claims. Id.

There were approximately 20 days of evidentiary hearings in the arbitration throughout 2022. (Petition ¶ 13). The Award was issued on February 27, 2023. The Award states that Morgan Stanley, Armstrong, and Kiefner, jointly and severally, must pay a total of $4,320,765 to Schwab in compensatory damages, legal fees, and costs, and to FINRA for its forum fees. (See Ex. A §§ 1, 3 and 4, p. 8). In sections 5-8 of the Award, Morgan Stanley also was ordered to pay Armstrong over $3 million and approximately $1.5 million to Kiefner. Morgan Stanley is paying all of these amounts without offset by the March 29, 2023 Due Date of the Award. Coss Dec. ¶ 13.

Section 12 of the Award states that all requests for relief not specifically addressed in the Award were denied by the arbitrators. As noted in the 8th paragraph of the Case Summary section

of the Award, one of Armstrong's and Kiefner's cross-claims against Morgan Stanley was for contribution and indemnification.  Section 12 of the Award makes clear that Armstrong's and Kiefner's claim against Morgan Stanley for contribution and indemnification was denied.  Instead, Armstrong and Kiefner were ordered to pay millions of dollars on a joint and several basis with Morgan Stanley to Schwab and FINRA.  Armstrong and Kiefner pretend as if the words "joint and several" do not appear in the Award.

More specifically, sections 1, 3, 4, and page 8 of the Award for the forum fees expressly state that the amounts set forth therein (which total $4,320,765.91) are to be paid "jointly and severally" by all three obligors—*i.e.*, Morgan Stanley, Armstrong, and Kiefner.  Thus, the Panel ordered Armstrong and Kiefner to be jointly and severally liable along with Morgan Stanley for the $4,320,765 Common Obligation to be paid to Schwab and FINRA.

The panel's decision to hold Armstrong and Kiefner "jointly and severally" liable for the $4,320,765.91 portions of the Award was unanimous.  It also was not arrived at lightly.  Even though the FINRA Code of Arbitration Procedure provides that the arbitration panel should endeavor to issue a final ruling within 30 business days, here they deliberated for a full three months.  The arbitrators also issued an interim order after closing arguments that Schwab (and the other parties) submit a breakdown of their attorneys' fees and costs, the very attorneys' fees and costs they unanimously found Armstrong to be "jointly and severally" liable for along with Morgan Stanley.  Moreover, the arbitration panel elected not to hold Armstrong and Kiefner "jointly and severally" liable for the punitive damages payable to Schwab in section 2 of the Award, but *expressly did so four separate times* with respect to the compensatory damages, attorneys' fees and costs payable to Schwab, as well as the forum fees owed to FINRA.  The arbitrators unquestionably intended the $4.3 million portion of the Award to be paid jointly and

severally, and Respondents have no right to ignore this portion of the Award while accepting the benefits of the other portions.

On March 3, 2023, Morgan Stanley's arbitration counsel, Christopher C. Coss, sent a letter to counsel for Armstrong and Kiefner asking him to confirm that Armstrong and Kiefner will pay Schwab and FINRA their two-thirds proportionate share of the Common Obligation, which is $1,440,255.30 each.  (A copy of this letter is annexed to the Coss Declaration as Exhibit B).  This letter stated that if Armstrong and Kiefner do not pay their two-thirds proportionate share of the Common Obligation, Morgan Stanley will pay it in full, as required under FINRA's rules. Armstrong and Kiefner refused to pay any portion of the joint and several Common Obligation and, therefore, Morgan Stanley is paying it in full.[3]

Morgan Stanley's counsel sent a follow-up letter to counsel for Armstrong and Kiefner on March 10, 2023, a copy of which is annexed as Exhibit C to the Coss Declaration.  This letter reiterated Morgan Stanley's request that Armstrong and Kiefner pay their two-thirds proportionate share of the Common Obligation directly to Schwab and FINRA (with Morgan Stanley paying Schwab its one-third share).  This letter also reiterated that if Armstrong and Kiefner do not pay their two-thirds proportionate share of the Common Obligation, Morgan Stanley will pay it in full.

Morgan Stanley's March 10, 2023 letter then stated as follows:

> [I]n the absence of an agreement, should Morgan Stanley be forced to cover your Clients' obligations to pay Schwab under the Award, Morgan Stanly would be compelled to commence legal action against them, seeking not only contribution (in the amount of $1,422,592.80 per person), but full indemnity under paragraph 8 of their Financial Advisor Employment Agreements . . . Morgan Stanley would also

---

[3] This letter also gave Armstrong and Kiefner the option of having Morgan Stanley set off the amounts owed to it by Armstrong and Kiefner under the "joint and several" sections of the Award against the amounts owed by Morgan Stanley to Armstrong and Kiefner under sections 5-8 of the Award. This letter stated that such a setoff would result in a net payment to Armstrong of $1,764,530.08, and a net payment to Kiefner of $87,530.08.  Armstrong and Kiefner refused Morgan Stanley's setoff offer.

be compelled to commence legal action seeking, among other things, injunctive relief preventing Mr. Armstrong and Mr. Kiefner from dissipating or disposing of any monies paid to them by Morgan Stanley pending the outcome of the legal proceeding seeking contribution and/or indemnification.

> As you know, in the 8th paragraph of the Case Summary section of the Award, the Panel noted that "the AP Respondents"-- Mr. Armstrong and Mr. Kiefner -- have asserted a cause of action against Morgan Stanley for "contribution and indemnity."  By virtue of the Panel's rulings in Sections 1, 3, 4, and 12 of the Award, the Panel made clear its intention for your clients to cover their proportional share of the joint and several liability amounts owed to Schwab (as well to FINRA).

The March 10th letter from Morgan Stanley's counsel concluded by urging counsel for Armstrong and Kiefner to reach a mutual agreement with Morgan Stanley over the mechanics of the payment to Schwab and a setoff.  Unfortunately, counsel for Armstrong and Kiefner rejected Morgan Stanley's request for an agreement, thus requiring Morgan Stanley to commence this proceeding, with a request for injunctive relief, and a separate arbitration for contribution to obtain an award for Armstrong's and Kiefner's two-thirds proportionate share of the Common Obligation.

## B.    The New Arbitration for Contribution

Simultaneous with commencement of this proceeding to confirm the Award and the filing of Morgan Stanley's Motion for a TRO/Preliminary Injunction, Morgan Stanley has commenced a new FINRA arbitration against Armstrong and Kiefner seeking (i) contribution of their proportionate share of the Common Obligation paid by Morgan Stanley to Schwab on behalf of all three obligors, and (ii) a permanent injunction against the dissipation or transfer of assets, up to $1,440,255.30.  (A copy of the Statement of Claim in that new arbitration is annexed as Exhibit D to the Coss Declaration).

As previously stated and shown below, Morgan Stanley seeks a Temporary Restraining Order and Preliminary Injunction to aid the new arbitration until the FINRA arbitrators can hold an expedited hearing and issue a ruling on Morgan Stanley's application to the arbitrators for a permanent injunction. Under Rule 13804 of the FINRA Code of Arbitration Procedure, FINRA

must hold an expedited hearing on Morgan Stanley's application for a permanent injunction within 15 days of issuance of a temporary injunction by the Court. Thus, the Temporary Restraining Order requested by Morgan Stanley will remain in effect for only a brief period of time, and is necessary to ensure that the award for contribution to be entered in the new arbitration is collectible.

## ARGUMENT

## POINT I

## THE PETITION TO CONFIRM THE AWARD SHOULD BE GRANTED

Under the Federal Arbitration Act, 9 U.S.C. §§ 9-13 ("FAA"), an arbitration award is to be confirmed by the court unless grounds exist under the FAA to vacate, modify, or correct the award. As stated in Whitlock Packaging Corp. v. Precision Diversified Systems, Inc., 59 F. Supp. 2d 384, 389 (D.N.J. 1998):

> Under the FAA, a court must grant a motion to confirm an arbitration award unless it has grounds to vacate, modify, or correct the award. See 9 U.S.C. § 9 (1970). The court's function in confirming or vacating an arbitration award is severely limited. Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters, 969 F.2d 1436, 1441 (3d Cir.), cert. denied, 506 U.S. 1022, 113 S.Ct. 660, 121 L.Ed.2d 585 (1992); Mutual Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 56 (3d Cir.1989). Their powers of review have been described as 'among the narrowest known to the law.' ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir.1995).

See also Azir v. Wells Fargo Bank, Civ. A. No. 19-18837 (MAS) (DEA), 2022 WL 605716, at *2 (D.N.J. March 1, 2022) (holding that "the Court can only overturn or modify an arbitration award where the circumstances involve fraud, corruption, arbitrator misconduct, or an arbitrator's abuse of power"); Zakarin v. Wells Fargo Advisors, LLC, Civ. A. No. 17-1088 (JMV) (JBC), 2017 WL 5128747, at *2 (D.N.J. Nov. 3, 2017) (confirming FINRA arbitration award because "under the FAA, a court must grant a motion to confirm unless there are grounds to vacate, modify, or correct the arbitration award; otherwise, arbitration awards are entitled to a strong presumption of correctness").

An award may be vacated only if one of the "narrow circumstances" listed in 9 U.S.C. § 10(a)—fraud, corruption, arbitrator misconduct, or abuse of the arbitrator's power—are met. Zakarin v Wells Fargo Advisors, supra, 2017 WL 5128747, at *2.  As stated in Azir v. Wells Fargo Bank, supra, 2022 WL 605716, at *2: "Absent one of these circumstances, district courts cannot vacate the award simply because the court interprets the contract differently, and even if it believes the arbitrator erred."

Pursuant to 9 U.S.C.§ 11, an arbitration award may only be modified or corrected where one of the three circumstances set forth therein is satisfied: (a) "evident material miscalculation of figures;" (b) issuance of an award "upon a matter not submitted;" or (c) "where the award is imperfect in matter of form not affecting the merits of the controversy."  The Third Circuit in United States for the Use and Benefit of JRW Service Group, LLC v. New Age Development Corp., No. 20-2055, 2023 WL 371394, at *3 (3d Cir. Jan. 23, 2023) recently held that an arbitrator's damage calculations cannot be modified because "we can only modify the award if there are obvious mathematical errors, 9 U.S.C. § 11(a), or if it is 'so completely irrational that it lacks support altogether'" (quoting Sutter v. Oxford Health Plans LLC, 675 F.3d 215, 220 (3d Cir. 2012), aff'd, 569 U.S. 564 (2013)).

The above-cited authority makes it clear that the Award in question in this proceeding must be confirmed. There are no grounds to vacate, modify, or correct the Award. Therefore, Morgan Stanley's Petition for confirmation of the Award pursuant to 9 U.S.C. § 9 should be granted.  See Robinson v. PNC Bank, Civ. A. No. 13-07818 (SRC), 2017 WL 2399082, at *4 (D.N.J. June 2, 2017) (ruling that "this Court must confirm the arbitration award under 9 U.S.C. § 9 because . . . PNC moved to confirm the arbitration award in the proper court within one year, and there are no grounds upon which to vacate, modify, or correct the award"); New Jersey Building Laborers

Statewide Benefit Funds v. IGWT Corp., No. 06-4399, at *2 (D.N.J. 2006) (finding that "the Court will confirm the arbitration award and enter final judgment in favor of Petitioner").

## POINT II

## MORGAN STANLEY'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION SHOULD BE GRANTED

Morgan Stanley seeks a Temporary Restraining Order and preliminary injunction to restrain and enjoin Armstrong and Kiefner from dissipating, transferring, or disposing of assets pending resolution of Morgan Stanley's application for a permanent injunction in the arbitration. Morgan Stanley will be paying millions of dollars to Armstrong and Kiefner under the other portions of the Award (sections 5-8 of the Award). Unless the Court enters an injunction, Armstrong and Kiefner are likely to dissipate or transfer that money, which would render the award for contribution uncollectible and unenforceable.

### A.   The Standard for Injunctive Relief

In determining whether to grant injunctive relief, the courts in the Third Circuit consider four factors: (1) the likelihood of success on the merits; (2) the probability of immediate and irreparable harm if an injunction is denied; (3) whether granting injunctive relief will result in even greater harm to the non-moving party than to the moving party; and (4) whether the public interest favors such relief.  See Miller v. Mitchell, 598 F.3d 139, 147 (3d Cir. 2010); Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharm. Co., 290 F.3d 578 (3d Cir. 2002); Juul Labs, Inc. v. 4X PODS, 439 F. Supp. 3d 341, 350 (D.N.J. 2020).

The "grant or denial of a preliminary injunction is committed to the sound discretion of the district judge."  Kershner v. Mazurkiewicz, 670 F.2d 440, 443 (3d Cir. 1982). See also A.L.K. Corp. v. Columbia Pictures Indus., Inc., 440 F.2d 761, 763 (3d Cir. 1971) (ruling that whether to grant a preliminary injunction rests in the court's discretion).

It is well-settled that an injunction to freeze assets, or enjoin the dissipation or transfer of monies paid to a debtor, is to be granted where the asset freeze is necessary to prevent a judgment or award from being rendered unenforceable.  See Elliott v. Kieswetter, 98 F.3d 47, 58 (3d Cir. 1996); Hoxworth v. Blinder, Robinson & Co., Inc., 903 F.2d 186, 206 (3d Cir. 1990) (finding that "the unsatisfiability of a money judgment can constitute irreparable injury"); Juul Labs v 4X Pods, supra, 439 F. Supp. 3d at 358.

As noted by the Third Circuit in Hoxworth, the irreparable harm requirement for an injunction to freeze assets pending judgment or an arbitration award is met upon "a showing that plaintiffs are likely to become entitled to the encumbered funds upon final judgment and a showing that without the preliminary injunction, plaintiffs will probably be unable to recover those funds." 903 F.2d at 197.  The Third Circuit further stated in Hoxworth that:

> Appellants contend at the outset that the possibility of an unsatisfied money judgment cannot, as a matter of law, constitute irreparable injury for purposes of granting a preliminary injunction. We find ample authority to the contrary, however. See, e.g., Deckert v. Independent Shares Corp., 311 U.S. 282, 290, 61 S.Ct. 229, 234, 85 L.Ed. 189 (1940) ('[T]here were allegations that [the defendant] was insolvent and its assets in danger of dissipation or depletion. This being so, the legal remedy against [the defendant], without recourse to the fund in the hands of [a third party], would be inadequate.'); United Steelworkers v. Fort Pitt Steel Casting, 598 F.2d 1273, 1280 (3d Cir.1979) ('[T]he fact that the payment of monies is involved does not automatically preclude a finding of irreparable injury.'); see also, e.g., Teradyne, Inc. v. Mostek Corp., 797 F.2d 43 (1st Cir.1986) (upholding a preliminary injunction issued to protect a potential damages remedy); Foltz v. U.S. News & World Report, 760 F.2d 1300, 1307–09 (D.C.Cir.1985) (holding that the '[i]rrevocable loss' of a cause of action for monetary recovery against an ERISA-covered pension plan would constitute irreparable injury for preliminary injunction purposes); In re Feit & Drexler, Inc., 760 F.2d 406, 416 (2d Cir.1985) ('[E]ven where the ultimate relief sought is money damages, federal courts have found preliminary injunctions appropriate where it has been shown that the defendant 'intended to frustrate any judgment on the merits' by 'transfer[ring] its assets out of the jurisdiction.' (citation omitted)); Roland Machinery Co. v. Dresser Industries, 749 F.2d 380, 386 (7th Cir.1984) (discussing four situations in which preliminary equitable relief is available because a damages remedy is "inadequate").

903 F.2d at 205–06.

In <u>Elliott</u>, the Third Circuit relied on its prior decision in <u>Hoxworth</u>, and stated as follows:

> That irreparable harm would occur absent an asset freeze is even more apparent where the very assets subject to a potential judgment will likely be dissipated without entry of the order. Thus, consistent with <u>Hoxworth</u>, <u>we hold that a court may find that a party seeking an asset freeze to preserve a money judgment may show irreparable injury by showing that the freeze is necessary to prevent the consumption, dissipation or fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation</u>.

98 F.3d at 58 (emphasis added).

Numerous district courts in this district have granted injunctions to freeze the dissipation or transfer of assets where the injunction is necessary to prevent the likely judgment from being rendered unenforceable.  See <u>Van Horn, Metz & Co., Inc. v. Crisafulli</u>, Civ. A. No. 21-01128 (FLW), 2021 WL 4317186, at *4 (D.N.J. Sept. 23, 2021) (injunction granted by quoting statement in <u>Elliott v. Kieswetter</u> that "a party seeking an asset freeze [or preliminary injunctive relief] to preserve a money judgment may show irreparable injury by showing that the freeze is necessary to prevent the consumption, dissipation or fraudulent conveyance of the assets that the party pursuing the asset freeze seeks to recover in the underlying litigation"); <u>Wilmington Savings Fund Society v. Otieno-Ngoje</u>, Civ. No. 2:16-5631 (WJM), 2016 WL 6821086 (D.N.J. Nov. 17, 2016) (injunction granted to prevent dissipation of funds subject to potential judgment); <u>PNY Technologies, Inc. v. Salhi</u>, Civ. A. No. 12-4916, 2016 WL 4267940 (D.N.J. Aug. 10, 2016) (injunction granted to prevent defendant from rendering himself judgment proof by dissipating and transferring assets).

The policy rationale behind this rule is that a money judgment or arbitration award could be rendered meaningless or frustrated if a judgment-debtor has no assets or funds to pay it.  See, e.g., <u>Marsellis-Warner Corp. v. Rabens,</u> 51 F. Supp. 2d 508, 531 (D.N.J. 1999) ("The likely future dissipation and transfer by the Defendants of otherwise recoverable assets would render a judgment in favor of [plaintiff] meaningless").

(i)     **Injunctions in Aid of Arbitration**

This asset freeze rule has been applied in the context of preliminary injunctive relief in aid of arbitration.  See Andrews v. Holloway, Civ. A. No. 95-1047(JBS), 1995 WL 875883, at *15 (D.N.J. Nov. 9, 1995) (granting a TRO and then a preliminary injunction in a dispute ultimately headed for arbitration where plaintiffs satisfied court of defendant's likely dissipation of assets which likely would continue without injunctive relief).

More generally, as noted above, it is well settled within the Third Circuit that a party may seek injunctive relief in aid of arbitration.  See Ortho, supra, 882 F.2d at 812 ("We believe that the congressional desire to enforce arbitration agreements would frequently be frustrated if the courts were precluded from issuing preliminary injunctive relief to preserve the status quo pending arbitration and, *ipso facto,* the meaningfulness of the arbitration process." (emphasis added)); Andrews v. Holloway, 1995 WL 875883, at *9 (ruling that "preliminary injunctive relief may be necessary in order to preserve the significance of a future arbitration").

Here, Morgan Stanley is seeking an injunction in aid of the new arbitration that it is commencing for contribution to determine Armstrong's and Kiefner's proportionate share of the Common Obligation that is jointly and severally owed by Morgan Stanley, Armstrong, and Kiefner.  Morgan Stanley will be paying millions of dollars to Armstrong and Kiefner by March 29, 2023 pursuant to the Award.  It is only fair that the Court protect Morgan Stanley from winding up with an uncollectible award. Unless Armstrong and Kiefner are enjoined from dissipating or transferring the very funds paid to them by Morgan Stanley up to $1,440,255.30, the award to be entered as a result of the new arbitration for contribution will likely be rendered meaningless and unenforceable.

**B.**     **Likelihood of Success**

On a motion for a preliminary injunction, the Court need only determine that there is a "reasonable probability of eventual success on the merits." Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 356-57 (3d Cir. 1980).  Here, there is high probability of success on Morgan Stanley's arbitration for contribution against Armstrong and Kiefner.

**(i)**     **New Jersey Law of Contribution**

Armstrong lives in New Jersey and the arbitration took place in Jersey City, New Jersey. Under controlling New Jersey case law, where parties are jointly and severally liable for a common obligation, and one of the co-obligors pays more than its proportionate/pro rata share, that co-obligor is entitled to contribution from the others to the extent of the overpayment.  See, e.g., Republic Bus. Credit Corp. v. Camhe-Marcille, 887 A.2d 185, 189 (N.J. Super. Ct. App. Div. 2005) ("Each joint obligor is responsible to the others for his or her proportionate share of the debt . . . [I]t is a 'well-settled equitable principle that a joint obligor who pays more than his proportionate share of a common liability is entitled to contribution from the other joint obligors.' If there are two other co-obligors, then each is responsible to the payor for one-half of the excess"); Ramapo Bank v. Bechtel, 539 A.2d 1276, 1278 n.2 (N.J. Super. Ct. App. Div. 1988) (holding that "defendant possessed a common-law right of proportional reimbursement from any co-guarantor if forced to pay more than his pro rata share of the debt").

The decisions in Republic Bus. Credit and Ramapo Bank both relied on D'Ippolito v. Castoro, 242 A.2d 617, 619 (N.J. 1968), where the New Jersey Supreme Court stated that "[Defendant's] argument is that he breached no duty because the law is well settled that a guarantor is under no obligation to [c]ontribute by payment to his coguarantor any portion of a debt until the latter has paid more than his pro-rata share. This is a correct statement of the law."

A federal court in the Third Circuit applying New Jersey common law to a contribution issue with respect to a verdict against six contractual indemnitors also held that contribution is to be based upon each indemnitors' pro rata share of the common debt (1/6 each).  See Hood v. Sheak & Korzun, P.C., No. Civ.A. 95-5378, 1997 WL 597707, at *1–4 (E.D. Pa. Sept. 18, 1997) ("[Indemnitor's] remedy, in the event that he pays more than his one-sixth share of the $325,400.85 verdict, is to seek contribution from the other five indemnitors[.]" (citing New Amsterdam Cas. Co. v. Popovich, 113 A.2d 666, 671 (N.J. 1955)).

### (ii)   Florida Law of Contribution

Kiefner lives in Florida and, if Florida law applies, it follows the same rule of contribution as in New Jersey (which is referred to in the Florida cases as "equitable contribution"). The rule of contribution in Florida is set forth in Schrank v. Pearlman, as follows:

> Florida law recognizes a right of equitable contribution. 'The [equitable contribution] principle attempts to distribute equally among those who have a common obligation, the burden of performing that obligation.' Fletcher v. Anderson, 616 So. 2d 1201, 1202 (Fla. 2d DCA 1993) (citation omitted). 'Thus, an obligor who has paid in excess of his pro rata share of the obligation, is entitled at law to contribution from the other obligors for their aliquot share.' Id. (citations omitted).

> As summarized by the Florida Supreme Court at an early date:

> The principal [sic] of contribution does not seem to have sprung from contract, but is based on a principle of justice and equity, that one person should not be singled out by the creator to pay the whole demand; and where this occurs, the law intervenes and places sureties relatively to each other in a state of equality as to the amount paid, and gives the party paying a remedy by action for contribution. **This right of action grows out of an implied agreement, that if one surety shall be compelled to pay the whole, or a disproportionate part of the debt, the other shall pay such a sum as shall render their common burden equal.**

683 So. 2d 559, 561–62 (Fla. Dist. Ct. App. 1996) (emphasis added) (citing Love v. Gibson, 2 Fla. 598, 618–19 (1849)); see also Meckler v. Weiss, 80 So. 2d 608, 609 (Fla.1955); Berkan v. Brown, 242 So. 2d 207, 209 (Fla. 3d DCA 1970), cert. denied, 246 So. 2d 111 (Fla.1971); Collection &

Recovery of Assets, Inc. v. Patel, 276 So. 3d 494, 498 (Fla. Dist. Ct. App. 2019) (in case of joint and several liability, "It would not be equitable for Chandra's heirs—as the current owners of CRA—to receive a windfall of the full amount of the purchased judgment when Chandra was liable for half of that amount."); Lopez v. Lopez, 90 So. 2d 456, 458 (Fla. 1956) ("The doctrine of equitable contribution is applied to prevent one of two, or more, joint obligors being required to pay more than his share of a common burden, or to prevent one obligor from being unjustly benefited or enriched at the expense of another.").

In Kiewit Infrastructure S. Co. v. W. Sur. Co., No. 2:20-CV-660-JLB-NPM, 2021 WL 5416149, at *2 (M.D. Fla. Nov. 19, 2021), the Middle District of Florida similarly explained:

> Florida law permits both statutory and equitable contribution. See Fla. Stat. § 768.31; Schrank v. Pearlman, 683 So. 2d 559, 561 (Fla. 3d DCA 1996). "The doctrine of equitable contribution attempts to ensure that the burden of performing a common obligation is equally distributed between those who have the obligation." Liberty Mut. Fire Ins. Co. v. Wal-Mart Stores E., LP, 269 F. Supp. 3d 1254, 1264 (M.D. Fla. 2017) (quoting Fletcher v. Anderson, 616 So. 2d 1201, 1202 (Fla. 2d DCA 1993)). "When a person pays more than his share of a common obligation, the law gives him the remedy of contribution to obtain from the other obligors payment of their respective shares of the obligation." Desrosiers v. Russell, 660 So. 2d 396, 398 (Fla. 2d DCA 1995) (citation omitted). Moreover, Florida courts have held that equitable contribution is available where "there is no express agreement covering rights of contribution." Schrank, 683 So. 2d at 561.
>
> Florida's case law does not provide a precise rule to determine whether parties share a "common burden." See e.g., U.S. Fid. & Guar. Co. v. Liberty Surplus Ins. Corp., No. 6:06-cv-1180-Orl-31UAM, 2007 WL 3275307, at *3 (M.D. Fla. Oct. 31, 2007) (comparing Florida case law to the Ninth Circuit's test for equitable contribution claim by one insurer against another). But parties may share a common obligation "if they are either co[-]obligors or joint tortfeasors, **and parties are co-obligors if they are jointly liable or jointly and severally liable on an obligation."** Helmet House Corp. v. Stoddard, 861 So. 2d 1178, 1180 (Fla. 4th DCA 2003) (citing Hartford Acc. & Indem. Co. v. Scarlett Harbor Assocs. Ltd. P'ship, 674 A.2d 106, 137 (Md. Ct. Spec. App. 1996), aff'd, 695 A.2d 153 (1997)).

Id. (emphasis added).

Similarly, in Shamieh v. HCB Fin. Corp., No. 1D21-1821, 2023 WL 2006513, at *1–2 (Fla. Dist. Ct. App. Feb. 15, 2023), the court explained:

The doctrine of equitable contribution is applied to prevent one of two, or more, joint obligors [from] being required to pay more than his [or her] share of a common burden[ ] ....” Lopez v. Lopez, 90 So. 2d 456, 458 (Fla. 1956) (citation omitted). “The doctrine of equitable contribution is grounded on principles of equity and natural justice .... The [doctrine] attempts to distribute equally among those who have a common obligation, the burden of performing that obligation .... While the [doctrine] arose in equity, it is generally enforceable in actions at law.” Fletcher v. Anderson, 616 So. 2d 1201, 1202 (Fla. 2d DCA 1993) (citations omitted). The law presumes that co-obligors are equally liable for a proportion of the guaranteed obligation. See Desrosiers v. Russell, 660 So. 2d 396, 398 (Fla. 2d DCA 1995).

The doctrine applies to cases involving joint contractual obligations when the parties’ agreement does not address their rights to seek contribution. Helmet House Corp. v. Stoddard, 861 So. 2d 1178, 1179–80 (Fla. 4th DCA 2003); Schrank v. Pearlman, 683 So. 2d 559, 561 (Fla. 3d DCA 1996). Parties share a common obligation if they are guarantors on a promissory note that provides for their joint and several liability. See Meckler v. Weiss, 80 So. 2d 608, 608–09 (Fla. 1955); see also Helmet House Corp., 861 So. 2d at 1180 (first citing Fletcher, 616 So. 2d at 1202; and then citing Curtis v. Cichon, 462 So. 2d 104, 105–06 (Fla. 2d DCA 1985)). Thus, the general rule is that when one co-obligor “pays more than his [or her] fair share of [a] debt owed by both, the payer is entitled to contribution from the other[ ] ....” Meckler, 80 So. 2d at 609; see also Campbell v. Gordon, 674 So. 2d 783, 788 (Fla. 1st DCA 1996); Desrosiers, 660 So. 2d at 399.

Id.; see also Regions Bank v. Carsello, No. 2:10-CV-113-FtM-36DNF, 2011 WL 13294593, at *2 (M.D. Fla. Aug. 16, 2011) (“Florida recognizes a claim for equitable contribution. The doctrine of equitable contribution is applied to prevent one of two, or more, joint obligors being required to pay more than his share of a common burden, or to prevent one obligor from being unjustly benefitted or enriched at the expense of another.” (internal citations omitted)); Fletcher v. Anderson, 616 So. 2d 1201, 1202 (Fla. 2d DCA 1993)(“Thus, an obligor who has paid in excess of his prorata share of the obligation, is entitled at law to contribution from the other obligors for their aliquot share.”).

Given the above, there is no question under either New Jersey or Florida law that Morgan Stanley may seek common law contribution, and that Morgan Stanley will prevail on its contribution claim in the new arbitration against Armstrong and Kiefner. Therefore, an award

unquestionably will be entered against each of them for $1,440,255.30, representing their one-third proportionate share (each) of the joint and several Common Obligation. Thus the requirement of likely success on the merits is fully met.

C.      **Irreparable Harm**

As previously noted, the Third Circuit decision in <u>Hoxworth v Blinder, Robinson & Co.</u>, 903 F.2d at 197, held that the irreparable harm requirement of a motion for injunctive relief is met upon a showing that "plaintiffs are likely to become entitled to the encumbered funds upon final judgment and a showing that without the preliminary injunction, plaintiffs will probably be unable to recover those funds." The Third Circuit reached a similar conclusion in <u>Elliott v. Kiesewetter</u>, 98 F.3d at 58.  <u>See</u> <u>also</u> <u>Andrews v. Holloway</u>, <u>supra</u>, 1995 WL 875883, at *15; <u>Marsellis-Warner Corp. v. Rabens</u>, <u>supra</u>, 51 F. Supp. 2d at 532; <u>Wilmington Sav. Fund Soc'y v. Otieno-Ngoje</u>, <u>supra</u>, 2016 WL 6821086, at *2.

Where a defendant is insolvent, exhibits financial instability, has engaged in unexplained expenditure/consumption of large amounts of money, or has an admitted inability to pay the potential judgment, the court has the authority to issue a Temporary Restraining Order and a Preliminary Injunction freezing that defendant's assets.  <u>See</u> <u>Gerardi v. Pelullo</u>, 16 F.3d 1363, 1365-74 (3d Cir. 1994) (enjoining defendants from disposing of $1.5 million settlement they received in another case to ensure assets for satisfaction of plaintiff's likely future money judgment for $1.15 million because, absent an injunction, the judgment would probably go unsatisfied in light of the defendants' financial instability); <u>PNY Techs., Inc. v. Salhi</u>, <u>supra</u>, 2016 WL 4267940, at *3 (granting motion for preliminary injunction freezing assets of defendant, because "[defendant] has already represented to [plaintiff] that he does not have the money to pay if a judgment issues against him in this case . . . His representation that he has spent all his money is

further evidence that [plaintiff] will suffer irreparable harm if the Court does not step in and prevent [defendant] from dissipating what he has left").

The U.S. Supreme Court in <u>Deckert v. Indep. Shares Corp.</u>, 311 U.S. 282, 290 (1940), recognized that financial insolvency is grounds to issue an injunction freezing assets. There, the U. S. Supreme Court held that the district court properly granted a TRO freezing assets pending the outcome of litigation as "there were allegations that [defendant] was insolvent and its assets in danger of dissipation or depletion.  This being so, the legal remedy against [defendant], without recourse to the fund in the hands of [the third party], would be inadequate."

Thus, there is clear authority authorizing a district court to restrain and enjoin a defendant from dissipating, transferring, or disposing of assets at the outset of a litigation or arbitration in order to secure the assets for satisfaction of a future judgment or arbitration award.  Here, immediate and irreparable harm will result to Morgan Stanley absent a Temporary Restraining Order and a Preliminary Injunction to restrain and enjoin Armstrong and Kiefner from dissipating or transferring the millions of dollars that Morgan Stanley will pay to them under the Award in the Schwab arbitration pending resolution of Morgan Stanley's application for a permanent injunction in the new arbitration for contribution.

As shown in the accompanying Declaration of Christopher Coss in support of Morgan Stanley's Motion for TRO/Preliminary Injunction, Armstrong testified at the arbitration that he has no money and that he was only able to meet his living expenses by withdrawing significant funds from his retirement account.  (Coss Dec. ¶ 24).  Armstrong works for a securities brokerage firm on a commission only basis (no salary) earning a small fraction of what he previously earned. Kiefner, for his part, testified that he is unemployed and had no income whatsoever in 2022.

Because of their dire financial condition, Armstrong and Kiefner are likely to dissipate or dispose of the millions of dollars that Morgan Stanley is paying to them under the Award, which would render Morgan Stanley's likely award against them for contribution uncollectible.  To ensure that Morgan Stanley's award in the new arbitration is enforceable, the Court should grant Morgan Stanley a Temporary Restraining Order and Preliminary Injunction to prohibit Armstrong and Kiefner from dissipating or disposing of the money to be paid to them by Morgan Stanley, up to $1,440,225.30, pending the arbitrators' ruling on Morgan Stanley's application for a permanent injunction.

**D.**      **An Injunction Will Not Cause Armstrong and Kiefner To Suffer Harm**

Armstrong and Kiefner will not suffer any harm from issuance of an injunction, which will be limited to $1,440,255.30 for each. As directed in the Award, Morgan Stanley will be paying Armstrong approximately $3 million, and Kiefner approximately $1.5 million. Armstrong will have a significant amount of money at his disposal after any asset freeze, and Kiefner also will have money left over.

The amount of time that Armstrong and Kiefner will be restrained by this Court's Temporary Restraining Order will be extremely brief. As shown in section F below, pursuant to FINRA Rule13804, any order issued by this Court will remain in effect only until a FINRA panel can issue a  ruling on an expedited basis for a permanent injunction. The FINRA hearing for that ruling must take place within 15 days of issuance of the Court's Temporary Restraining Order.  It then will be up to the FINRA arbitrators to decide whether to dissolve, modify, or continue the TRO on a permanent basis.

The equities overwhelmingly favor issuance of injunctive relief by the Court.  Indeed, Morgan Stanley should not have had to file a new arbitration at all, or incur the expense associated with this motion.  The need to do so has arisen only because Armstrong and Kiefner have

deliberately chosen to "cherry pick" those portions of the Award they are happy with (whereby they receive nearly $4.5 million in total) and simultaneously ignore the arbitration panel's unanimous and multiple findings that they should be held "jointly and severally" liable as a result of their own wrongdoing.

The Temporary Restraining Order and Preliminary Injunction to be issued by this Court should state that Armstrong and Kiefner are each prohibited from dissipating or disposing of the money to be paid to them by Morgan Stanley, or any other assets, up to $1,440,255.30 (exclusive of any attorneys' fees and costs owed by them to their attorney in the arbitration). Since they each owe Morgan Stanley $1,440,255.30 under the joint and several portions of the Award, they could not possibly be harmed by an injunction limited to this amount.

E.      **An Injunction Would Serve the Public Interest**

There is a strong public policy favoring enforcement of judgments and preventing debtors from frustrating enforcement of judgments. See State Farm Mut. Auto Ins. Co. v. Am. Rehab And Physical Therapy, Inc., 376 F. App'x 182, 184 (3d Cir. 2010) (holding that "the public has an interest in the enforcement of judgments").

There also is a strong public policy in ensuring that arbitration awards are upheld, as evidenced by the fact that courts are to confirm arbitration awards except in extraordinary circumstances (such as fraud or corruption). United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379 (3d Cir. 1995) (finding that the law in the Third Circuit is clear that arbitration awards are to be confirmed and that the district courts "have very little authority to upset arbitrators' awards"). This is consistent with the strong federal policy of encouraging and favoring arbitration. See In re Prudential Ins. Co. of America Sales Practice Litig. All Agent Actions, 133 F.3d 225, 231 (3d Cir. 1998) (holding that "the Federal Arbitration Act reflects a pervasive federal interest in promoting arbitration").

Here, the Award in the Schwab arbitration directed Armstrong and Kiefner to pay roughly $4.3 million to Schwab and FINRA on a joint and several basis with Morgan Stanley. Since Morgan Stanley is paying the entire amount of the Common Obligation, Morgan Stanley is entitled to contribution from Armstrong and Kiefner for their proportionate share of the Award in the amount of $1,440,255 each. To ensure that the award to be entered against Armstrong and Kiefner in the new arbitration for contribution is collectible, it is in the public's interest for the Court to grant Morgan Stanley's motion for a Temporary Restraining Order and Preliminary Injunction limited to $1,440,255 for each of Armstrong and Kiefner.  It certainly is not in the public interest for Armstrong and Kiefner to demand payment of the monies payable to them (which Morgan Stanley is voluntarily paying in any event) but shirk their own obligations under the Award at the very same time.

**F.    FINRA's Rules for Injunctions in Aid of Arbitration**

Rule 13804 of the FINRA Code of Arbitration Procedure for Industry Disputes governs temporary injunctive orders by a court.  It states that a party to an industry dispute arbitration may seek a temporary restraining order from a court of competent jurisdiction provided that the statement of claim in the arbitration contains a claim for permanent injunctive relief.

FINRA Rule 13804 further states that "if a court issues a temporary injunctive order, an arbitration hearing on the request for permanent injunctive relief will begin within 15 days of the date the court issues the temporary injunctive order."  Therefore, any TRO issued by the Court will be in effect for a brief period of time because the arbitration panel must hold an expedited hearing within 15 days on the application for a permanent injunction.  Stated differently, the arbitration panel will take over the issue of injunctive relief within 15 days of the Court issuing a TRO.  Because the Court's TRO will be in effect for only a brief period of time, there is no danger that the Court's TRO will cause any harm to Armstrong and/or Kiefner.

## **CONCLUSION**

For the reasons set forth herein, in the accompanying Declaration of Christopher Coss, and in Morgan Stanley's Petition, the Court should grant Morgan Stanley's Petition for confirmation of the Award, and Morgan Stanley's Motion for a Temporary Restraining Order and Preliminary Injunction prohibiting Armstrong and Kiefner from dissipating or disposing of the money to be paid to them by Morgan Stanley, or any other assets, up to $1,440,255 each.

Dated:  March 24, 2023

Respectfully submitted,

DILWORTH PAXSON LLP

By:  /s/ Yonit A. Caplow
_____
Yonit A. Caplow (018932012)
Dilworth Paxson LLP
2 Research Way
Princeton, New Jersey 08540
Tel: (609) 924-6000
ycaplow@dilworthlaw.com

        -and-

Ira N. Glauber
Dilworth Paxson LLP
99 Park Avenue, Suite 320
New York, New York 10016
Tel: (917) 675-4252
iglauber@dilworthlaw.com
*Attorneys for Petitioners Morgan
Stanley Smith Barney LLC*